**In re UNITED CONTAINER LLC, Debtor.**

**E.S. Bankest, LLC, Plaintiff,**

v.

**United Beverage Florida, LLC, et al., Defendants.**

**E.S. Bankest, LLC, Plaintiff,**

v.

**General Electric Company, d/b/a GE Supply, et al., Defendants.**

**Bankruptcy No. 01–22614–8G7. Adversary Nos. 02–1285–BKC–RAM–A, 02–1372–BKC–RAM–A.**

United States Bankruptcy Court, S.D. Florida.

Oct. 8, 2002.

Raymond V. Miller, Gunster, Yoakley & Stewart, P.A., Miami, Fla., for Bankest in United Beverage Proceeding.

Gary M. Freedman, Tabas, Freedman & Soloff, P.A., Miami, Fla., for Bankest in GE Proceeding.

David Levine, Tew, Cardenas & Rebak, et al., Miami, Fla., for Unipro.

Lawrence M. Dudek, Miller, Canfield & Paddock, P.A., Detroit, MI, for Unisource.

Andrea S. Hartley, Akerman, Senterfitt & Eidson, P.A., Miami, Florida, for Brown Foodservice, Inc., et al.

Jose I. Astigarraga, Astigarraga, Davis, Mullins & Grossman, P.A., Miami, Fla., for GE.

### *MEMORANDUM OPINION*

ROBERT A. MARK, Chief Judge.

This opinion addresses motions for remand filed in two adversary proceedings, proceeding Adv. No. 02–1285, styled *E.S. Bankest, L.L.C. ("Bankest") v. United Beverage, L.L.C. et al.* (the "United Beverage Proceeding") and Adv. No. 02–1372, styled *Bankest v. General Electric Company ("GE"), et al.* (the "GE Proceeding"). These proceedings are not consolidated but the Court is issuing a single Memorandum Opinion since the motions for remand in the two proceedings present similar factual issues and identical legal issues.

Before the Court are three motions to remand the United Beverage Proceeding, specifically Bankest's Motion to Remand Case to State Court, the Motion by Unipro Foodservice, Inc. for Abstention and Remand of Adversary Proceeding, and the Motion to Remand to State Court filed by Defendants, Brown Foodservice, Inc., Doerle Food Service, Inc., Cash–Wa Distributing Company of Kearney, Inc., and Farm Boy Meats of Evansville, Inc. By separate pleading, Defendant, Alcoa, Inc. filed a Joinder in Unipro's Motion for Remand. Also before the Court is Bankest's Motion to Abstain and to Remand Case to State Court filed in the GE Proceeding (The Court will refer collectively to these motions as the "Motions for Remand" and collectively refer to the moving parties as the "Remand Movants").

## Procedural Background

The United Beverage Proceeding was removed to this Court under 28 U.S.C. § 1452 on June 21, 2002, from the Circuit Court, Miami–Dade County, Florida, Case No. 02–13207–CA0–4 on a Notice of Removal filed by one of the defendants, Unisource Worldwide, Inc. ("Unisource"). The GE proceeding was removed to this Court on July 25, 2002 from the Circuit Court, Miami–Dade County, Florida, Case No. 02–15662–CA–32, on a Notice of Removal filed by GE. Removal is based on an allegation that these adversary proceedings are "related to" the Chapter 7 bankruptcy case of United Container, L.L.C. ("United Container") (Unisource and GE will be collectively referred to in this Opinion as the "Removing Defendants"). Although the United Container bankruptcy case is pending in the Middle District of Florida, the state court cases were removed to this Court since cases removed under 28 U.S.C. § 1452(a) are removed "to the district court for the district where such civil action is pending."

United Container (the "Debtor") filed its voluntary Chapter 11 petition on December 6, 2001 in the Middle District of Florida, Tampa Division, Case No. 01–22614–BKC–8G7. The bankruptcy case is pending before Judge Glenn. United Container's bankruptcy schedules list Bankest, the plaintiff in both of these proceedings, as United Container's largest secured creditor, holding a secured, but disputed claim in an amount close to $11 million. Bankest filed a proof of claim in United Container's bankruptcy case, and filed a motion to convert the case to Chapter 7 on January 15, 2002. On January 22, 2002, the bankruptcy court entered an order converting the case to Chapter 7.

Unisource, the defendant which removed the United Beverage Proceeding, also filed a proof of claim in United Container's bankruptcy case. Following removal of the United Beverage Proceeding, on July 12, 2002, Unisource filed a Motion to Transfer Venue of the proceeding to the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, the court that is presently administering United Container's bankruptcy case. On July 19, 2002, this Court entered an Order setting a hearing on August 29, 2002, on the Motion to Transfer Venue and setting a status conference on certain other related matters, including the Motions for Remand. The Court's intention was to consider the Motion to Transfer Venue first.

Unipro and Bankest both filed motions seeking reconsideration of the July 19th Order. They argued that the Court should hear the Motions for Remand first, and only entertain the Motion to Transfer Venue if the Motions for Remand were denied. The Court then entered a second Scheduling Order which advised the parties that, at the August 29th hearing, the Court would determine whether the Motions for Remand should be heard first. The Order further advised the parties that a briefing schedule and further hearing would be set on the Motions for Remand if the Court agreed that the remand issues should be determined here rather than by Judge Glenn in Tampa.

At the August 29th hearing, the Removing Defendants stipulated to the procedure urged by the Remand Movants, namely having this Court first determine whether to remand these proceedings to the state court, and only thereafter, if remand is denied, entertain the Motion to Transfer Venue. This procedure is in accord with the majority view that jurisdictional issues should be considered first. *See Lone Star Industries, Inc. v. Liberty Mutual Insurance,* 131 B.R. 269, 272 (D.Del.1991); *Global Underwriting Management, Inc. v. Chatham Underwriting Management,*

*Inc.*, 147 B.R. 601, 603 (Bankr.S.D.Fla. 1992).

Following the August 29th hearing, the Court entered a Scheduling Order setting a briefing schedule and oral argument for September 18, 2002 on the Motions for Remand. The Court has reviewed the record, including the two state court complaints, the Motions for Remand and the memoranda submitted by the parties. The Court has also considered the oral arguments presented at the September 18th hearing, and applicable case law. For the reasons that follow, the Motions for Remand are granted.

### Facts

On May 21,2002, Bankest filed the United Beverage Proceeding in state court alleging it was victimized by a large multi-party fraudulent invoice scheme involving the more than fifty named defendants. The scheme allegedly originated from Bankest's factoring relationship with the Debtor, United Container, which is not a party to this proceeding.

By its complaint, Bankest, a commercial factor, seeks damages in excess of $10 million in the United Beverage Proceeding, and has requested a jury trial. The complaint is based upon state law claims broken into five main legal theories: 1) conspiracy to defraud; 2) violation of Florida's Civil Remedies for Criminal Practices Act; 3) fraudulent misrepresentation; 4) negligent misrepresentation; and 5) account stated for the accounts receivable. Several defendants have filed responsive pleadings. Some answered and others filed motions to dismiss.

On June 21, 2002, Unisource filed its Notice of Removal pursuant to 28 U.S.C. § 1452(a) and 28 U.S.C. § 1334(b). The sole relationship between the United Beverage Proceeding and the United Container bankruptcy case, according to Unisource's removal papers, is that both

Unisource and Bankest have filed proofs of claim in the United Container bankruptcy. According to its papers, Unisource's bankruptcy claim is contingent upon the results of the United Beverage Proceeding. Specifically, Unisource argues that if it is found liable to Bankest, it will have a claim upon a guarantee or for contribution and indemnity against the Debtor, United Container.

The GE Proceeding has taken a similar course. On June 18, 2002, Bankest filed the similar GE Proceeding in state court alleging it was victimized by the same multi-party fraudulent invoice scheme that allegedly originated from Bankest's factoring relationship with United Container. The complaint names GE and four other defendants. Bankest seeks damages in the GE Proceeding in excess of $2 million, and again has requested a jury trial. This complaint is also based upon state law claims divided into the same five main legal theories alleged in the United Beverage Proceeding.

GE also filed a proof of claim in United Container's bankruptcy case. The GE proof of claim sets forth claims against United Container for breach of contract, fraud, and amounts due on open accounts. GE filed its Notice of Removal on July 25, 2002, pursuant to 28 U.S.C. § 1452(a) and 28 U.S.C. § 1334(b) alleging that this proceeding is "related to" the now-pending United Container bankruptcy case in which Bankest is pursuing its overlapping bankruptcy claim on the same invoices at issue in the GE Proceeding.

Generally speaking, Bankest's claim against United Container is in the nature of a "put back" claim under its factoring agreement with United Container. Bankest owns outright the receivables which form the basis for its claims in both of these proceedings. Those receivables are

not property of United Container's Chapter 7 estate, but Bankest seeks recovery from United Container to the extent it cannot recover upon the receivables from the Defendants in these adversary proceedings.

### Discussion

■ Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1095 (11th Cir.1994); *Wymbs v. Republican State Executive Committee,* 719 F.2d 1072, 1076 (11th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984). They may only hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673. The Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. *See Burns,* 31 F.3d at 1095.

The Remand Movants argue several grounds for remand, summarized as follows: (1) the Court lacks subject matter jurisdiction under 28 U.S.C. § 1334(b), (2) the mandatory abstention provision of § 1334 requires the Court to abstain from hearing these proceedings, and (3) the Court should abstain under the permissive abstention provision of § 1334 or remand the proceedings on equitable grounds pursuant to 28 U.S.C. § 1452(b).

The Removing Defendants counter that: (1) this court does have "related to" bankruptcy jurisdiction over these proceedings under § 1334(b), (2) mandatory abstention under § 1334 is not applicable to these proceedings, and (3) the factors to be considered under the § 1334 permissive abstention analysis do not weigh in favor of abstention nor do the facts and procedural posture of these proceedings support remand under § 1452(b).

### A. *"Related To" Jurisdiction Exists (Barely)*

■ Removal under § 1452 is proper only if the federal court has jurisdiction under the bankruptcy jurisdiction provisions in 28 U.S.C. § 1334. Section 1334(b) grants jurisdiction over "all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11." (emphasis added). The parties stipulate that the two removed actions do not "arise under" or "arise in" the United Container bankruptcy case. Therefore, subject matter jurisdiction exists, if at all, under the "related to" jurisdictional grant.

The Remand Movants argue that the claims in these proceedings are too remote from the United Container bankruptcy to sustain "related to" jurisdiction. The Removing Defendants counter by arguing that the outcome of these proceedings could give rise to enforceable indemnification and contribution claims against United Container under various statutes and contracts. Accordingly, they contend that the outcome of these proceedings could substantially affect the administration of the United Container bankruptcy estate. In reply, the Remand Movants argue that speculative claims for indemnity or contribution do not give rise to "related to" jurisdiction under § 1334(b).

■ The Eleventh Circuit has expressly adopted the "related to" jurisdiction test expounded by the Third Circuit in *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984), where the court stated:

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against that

debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*See In re Toledo,* 170 F.3d 1340, 1345 (11th Cir.1999) (citing *In re Lemco Gypsum, Inc.,* 910 F.2d 784, 788 (11th Cir.1990)). In Toledo, the court noted that "[t]he key word in the *Lemco Gypsum/Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad." 170 F.3d at 1345 (citing *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 264 (3rd Cir.1991)).

The *Pacor* court, however, tempered its broad definition of "related to" with the following passage:

> On the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of [former] section 1471(b). Judicial economy itself does not justify federal jurisdiction. See generally *Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

743 F.2d at 994.

Although, *Pacor* is often cited to support a broad interpretation of "related to" jurisdiction, the *Pacor* court actually found that related to jurisdiction did not exist under the facts of that case. Moreover, the *Pacor* facts have some similarity to those presented here requiring a further inquiry into the *Pacor* "holding" as distinct from the off quoted *Pacor* "test." Specifically, the *Pacor* court held as follows:

> Our examination of the Higgins–Pacor–Manville controversy leads us to conclude that the primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate, and therefore is not "related to" bankruptcy

within the meaning of [former] section 1471(b). At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins–Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the Higgins–Pacor action, it could not be bound by res judicata or collateral estoppel. Even if the Higgins–Pacor dispute is resolved in favor of Higgins (thereby keeping open the possibility of a third party claim), Manville would still be able to relitigate any issue, or adopt any position, in response to a subsequent claim by Pacor. Thus, the bankruptcy estate could not be affected in any way until the Pacor–Manville third party action is actually brought and tried.

*Id.* at 995. Thus, despite the broad language in the *Pacor* test, *Pacor* is cited by the Remand Movants for the proposition that actions between non-debtors that may give rise to indemnity claims against a bankruptcy estate are not sufficiently "related to" bankruptcy to support jurisdiction under § 1334(b). *See Retirement Systems of Alabama v. Merrill Lynch & Co.,* 209 F.Supp.2d 1257 (M.D.Ala.2002). *See also Wise v. Travelers Indemnity Co.,* 192 F.Supp.2d 506, 514–517 (N.D.W.Va. 2002) (collecting cases) *In re Asbestos Litigation,* 2002 WL 649400 (D.Or.2002); *Armstrong v. Honeywell Int'l, Inc.,* 198 F.Supp.2d 899 (S.D.Tex.2002); *Da Silva v. American Savings,* 145 B.R. 9, 12 (S.D.Tex.1992); *In re VideOcart, Inc.,* 165 B.R. 740, 744 (Bankr.D.Mass.1994).

At least two courts have held, however, that potential claims for indemnity or contribution against a debtor in bankruptcy can give rise to bankruptcy jurisdiction under § 1334(b). *See Belcufine v. Aloe,*

112 F.3d 633, 636–37 (3d Cir.1997); *In re Dow Corning Corp.*, 86 F.3d 482, 490–494 (6th Cir.1996). In *Dow Corning*, the Sixth Circuit noted that "[i]t has become clear following Pacor that 'automatic' liability is not necessarily a prerequisite for a finding of 'related to' jurisdiction." 86 F.3d at 491 (citing *Marcus Hook*, 943 F.2d at 264).

The *Dow Corning* court held that bankruptcy jurisdiction did exist based on potential claims for indemnity between a debtor and several solvent co-defendants, largely basing its decision on the "qualitative difference" between the single suit in *Pacor* and the "thousands of potential indemnification claims" attendant to the breast implant litigation involving Dow Corning and its co-defendants. 86 F.3d at 494.

In *Belcufine*, the suit at issue potentially implicated contractual indemnity claims by officers against their bankrupt company. 112 F.3d at 634. Without addressing the question of whether such claims might be litigated by the bankrupt company subsequent to a judgment against the defendant officers, the court held that the broad language of *Pacor* supported bankruptcy jurisdiction over the suit between employees of the company and the non-debtor officers. *Id.* at 636–37. The situation in *Belcufine*, however, was somewhat unique. The third party suit resulted from the officers' failure to direct payment of the employees' wages, but the officers were prevented from doing so by operation of bankruptcy law. Id. at 634. Furthermore, the company's liability for the officers' potential liability was clear from the company's bylaws and apparently undisputed. Id. at 636. Accordingly, *Belcufine* is best interpreted as an exception or special case in the context of the *Pacor* test.

In discussing the *Pacor* test, the Eleventh Circuit has emphasized the breadth of "related to" jurisdiction by echoing the *Marcus Hook* court's focus on the word "conceivable." See *In re Toledo*, 170 F.3d at 1345. *Toledo* involved a suit that had the potential to affect the value of a property interest that was an asset of the subject bankruptcy estate. *Id.* at 1345–46. Although the outcome of the suit had no actual effect on the estate, the court held that some effect was conceivable at the time the bankruptcy court heard the case, and this was enough to support jurisdiction. *Id.*

The *Toledo* court's emphasis on "conceivable" may suggest that the Eleventh Circuit would be more inclined to follow the Sixth Circuit's lead in *Dow Corning*, rather than strictly adopt the holding of *Pacor*, in analyzing whether contingent claims could support "related to" jurisdiction. Since *Toledo* did not involve potential indemnity claims, however, this is a matter of speculation. The question is whether "any conceivable effect" means that the potential outcome of a case, however remote a possibility, will have a direct effect on a bankruptcy estate, or that the outcome of a case may give rise to a potential effect. Given the current state of the law, this appears to be an open question in the Eleventh Circuit.

The Removing Defendants contend that agreements between them and United Container establish rights of indemnity against United Container if Bankest prevails against them in these proceedings. Furthermore, the Removing Defendants argue that they will be entitled to indemnification and contribution from United Container pursuant to the state and federal laws that form the basis of this suit. As with all contingent claims, however, there is some uncertainty with respect to the viability of these potential claims. In short, subject matter jurisdiction over these proceedings is unclear.

Ultimately, the Court finds that related to jurisdiction exists, albeit barely. The balance is tipped in favor of finding jurisdiction for two reasons. First, there is no Eleventh Circuit authority specifically holding that jurisdiction cannot be found where the outcome of the removed case will create only contingent claims against a debtor. Second, unlike *Pacor*, the outcome of these proceedings will not simply create contingent bankruptcy claims for any defendant who loses. If Bankest prevails, the outcome of the proceedings will also directly affect the amount of its claim against United Container. In short, *Pacor* did not address a situation, where, as here, both the Plaintiff and the Removing Defendants have filed a proof of claim in the Debtor's bankruptcy case and all of the claims could be affected by the outcome of the removed proceedings. Thus, the Court finds that subject matter jurisdiction exists.

### B. *Mandatory Abstention is Required Under § 1334(c)(2)*

■ Even if there is "related to" jurisdiction, the Remand Movants argue that this Court must remand these proceedings pursuant to the mandatory abstention provisions in 28 U.S.C. § 1334(c)(2). That section provides as follows:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

As directed by this statute, courts must abstain from hearing a state law claim if the following requirements are met: (1) The claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding. That is, it is related to a case under title 11 but does not arise under or arise in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court. 28 U.S.C. § 1334(c)(2); *In re Rupp & Bowman Co.*, 109 F.3d 237, 239 (5th Cir.1997); *See Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1206 (5th Cir. 1996); *Seale v. Owens*, 134 B.R. 181, 185 (E.D.La.1991); *Baxter Healthcare Corp. v. Hemex Liquidation Trust*, 132 B.R. 863, 866 (N.D.Ill.1991).

■ As a threshold matter, the Removing Defendants argue that mandatory abstention is not applicable to removed cases. *In re Branded Products, Inc.*, 154 B.R. 936, 939 (Bankr.W.D.Tex.1993); *In re Micro Mart, Inc.*, 72 B.R. 63 (Bankr.N.D.Ga. 1987); *In re 666 Assocs.*, 57 B.R. 8, 12 (Bankr.S.D.N.Y.1985). Although these cases support the Removing Defendants' argument, the Eleventh Circuit has specifically ruled the other way in *Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir. 2000), "[W]e therefore hold that § 1334(c)(2) applies to state law claims that have been removed to federal court under § 1452(a)." This appears to be the majority view. *See e.g. In re Midgard Corp.*, 204 B.R. 764, 774 (10th Cir. BAP 1997) and the several cases cited therein.

■ The Removing Defendants concede that the second and third elements of mandatory abstention are satisfied. The claims in these proceedings are "related to" United Container's bankruptcy case, but do not arise under title 11 or arise in United Container's bankruptcy case and both proceedings were initiated in state court. The Removing Defendants challenge the two other elements arguing (1)

that Bankest's claim has an independent basis for federal jurisdiction, specifically federal question jurisdiction under 28 U.S.C. § 1331; and (2) that the Remand Movants have not established that these proceedings could be timely adjudicated in state court. These issues are addressed below.

### 1. *No Independent Basis Exists for Federal Jurisdiction*

Bankest's complaint in both proceedings includes a claim that defendants violated Florida's Civil Remedies for Criminal Practices Act. The Removing Defendants argue that this claim raises federal questions and provides an independent basis for federal jurisdiction under § 1331. In support, they note that the predicate acts Bankest alleges to support of its cause of action under the Florida Civil Remedies for Criminal Practices Act include allegations of federal mail and wire fraud, and that the Court's resolution of this claim depends on the interpretation of federal mail and wire fraud statutes.

The Removing Defendants rely primarily on the holding and analysis in *Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir.2000). In *Ayres*, the plaintiffs brought a state court action against General Motors and an automobile component manufacturer under Georgia's Racketeer Influenced and Corrupt Organizations Act ("Georgia's RICO Act"). The *Ayres* plaintiffs alleged that defendants violated federal mail and wire fraud statutes by failing to report an auto component defect as required by the National Traffic and Motor Vehicle Safety Act. After the case was removed to federal court, plaintiffs filed a motion to dismiss for lack of federal jurisdiction.

Of importance here, the *Ayres* court began its analysis by discussing a general principle of jurisdiction set forth by the United States Supreme Court, namely that the mere presence of a federal issue in a state law cause of action does not confer federal question jurisdiction. "Although a case may arise under federal law 'where the vindication of a right under state law necessarily turned on some construction of federal law,' *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983), 'the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986) *quoted in Ayres*, 234 F.3d at 517–18. The *Ayres* court, however, ultimately found that under the exceptional facts of its case there was federal question jurisdiction.

The Removing Defendants focus on the holding in *Ayres* and point out that, in finding that there was "sound basis for removal jurisdiction," the court of appeals held that plaintiffs' claim for violation of Georgia's RICO Act presented a federal question. They also cite to the *Ayres* court's statement that "[a] violation of the federal mail and wire fraud statutes is an essential element of the Plaintiffs' cause of action, the proof of which involves resolution of a substantial, disputed question of federal law." *Ayres*, 234 F.3d at 518 (*citing Jairath v. Dyer*, 154 F.3d 1280, 1282 (11th Cir.1998) ("[F]ederal-question jurisdiction may also be available if a substantial, disputed question of federal law is a necessary element of a state cause of action"); *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799 (4th Cir.1996) (recognizing that, even though a cause of action may be created by state law, it may involve the "resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331")).

Although the Removing Defendants are understandably encouraged by the holding in *Ayres,* further analysis reveals that the facts in *Ayres* are clearly distinguishable and the *Ayres* court made it abundantly clear that it limited its conclusion to the specific facts of the case:

> However, to find federal question jurisdiction in this case, we need not go so far as to hold that every state RICO cause of action which depends upon proving, as necessary predicate acts, a violation of the federal mail and wire fraud statutes establishes federal question jurisdiction.

*Ayres,* 234 F.3d at 519. In a footnote to that statement, the Court specifically stated "Thus we do not so hold." *Id.* at FN 10. The court went on to say:

> The particular controversy in this case may very well make this case one of those exceptional cases requiring that we decide "a federal question substantial enough to confer federal question jurisdiction." *City of Huntsville v. City of Madison,* 24 F.3d 169, 174 (11th Cir. 1994).

*Id.*

The Removing Defendants argue that the facts here are similar to *Ayres* since alleged violations of federal mail and wire fraud statutes are among the predicate acts alleged to establish Bankest's cause of action under Florida's Civil Remedies for Criminal Practices Act. Despite this similarity, the facts in the United Beverage and GE complaints are materially different.

These differences are readily discernible upon further review of *Ayres,* specifically the two prong rationale espoused by *Ayres* to establish federal question jurisdiction in a case that includes the presence of a federal issue in a state cause of action:

> "We find federal question jurisdiction in this case because the case involves both (1) the *necessity* for Plaintiffs to prove, as an essential element of their state law cause of action, the existence of federal mail and wire fraud crimes as predicate acts, which crimes would be enforceable in a federal civil RICO cause of action; and (2) the fact that proof of the alleged federal mail and wire fraud crimes involves a *very substantial* federal question."

*Ayres,* 234 F.3d at 520 (emphasis added).

The facts in these proceedings do not satisfy either of these two prongs. First, it is not "necessary" for Bankest to prove federal law violations since non-federal predicate acts are included in both complaints. Second, proof of the federal predicate acts does not raise a "very substantial" federal question. In *Ayres,* the Eleventh Circuit found the federal question substantial because the mail fraud allegations rested upon interpretation of a separate federal statute, the National Traffic and Motor Vehicle Safety Act (the "Safety Act"), 49 U.S.C. § 30118 et. seq. To prove the mail fraud, the *Ayres* plaintiffs needed a court to interpret the Safety Act and find that it created an independent duty of the defendants to disclose alleged safety defects to the plaintiffs. *Ayres,* 234 F.3d at 516–17. In the United Beverage and GE proceedings, there is no similar federal statute interpretation issue that this Court could properly characterize as a "very substantial" federal question.

This conclusion is bolstered by also comparing the facts of the cases cited by *Ayres* as presenting "very substantial" federal questions including *Franchise Tax Board* and *Ormet Corp.* As discussed in *Ayres,* the Supreme Court in *Franchise Tax Board* found federal jurisdiction

> [w]here a plaintiff's cause of action has as an essential element the existence of

a right under federal law which will be supported by a construction of the federal law concluding that the federal crime is established, but defeated by another construction concluding the opposite.

*Ayres,* 234 F.3d at 519. *Ormet Corp.* also involved interpretation of a federal statute, namely the Clean Air Act, and an application of that Act to the contract between the parties. *Ormet Corporation,* 98 F.3d at 807.

The Bankest complaints in these proceedings do not trigger any similar need for interpreting a federal statute and therefore do not present a "very substantial" federal question. Further, as clearly stated in *Ayres* and quoted more fully earlier, the Eleventh Circuit in *Ayres* described the case as an "exceptional case" and specifically did *not* hold that federal question jurisdiction is· established every time a state RICO claim depends upon proving a violation of federal mail and wire fraud as necessary acts. Therefore, the Court concludes that the United Beverage Proceeding and the GE Proceeding could not have been commenced in federal court absent bankruptcy jurisdiction under section 1334. Accordingly, this element of mandatory abstention is satisfied.

### 2. *These Proceedings Can Be Timely Adjudicated in State Court*

■■■ The only other contested issue under mandatory abstention is whether these proceedings "can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). The burden is on the Remand Movants to establish this element. *Midgard,* 204 B.R. at 778. The Removing Defendants argue that they have failed to meet their burden.

The Remand Movants offered some empirical information regarding the expected time to get to trial in the state court compared to the United States district court, but nobody can truly predict how long it will take for a complicated case to get to trial. The Removing Defendants also argue that the "timely adjudication" element is usually met when the state court case is close to trial or has at least progressed through the pleading stage. As they correctly note, the GE and United Beverage Proceedings are in ˙their early stages.

■■■ If it was necessary for the Remand Movants to present specific, convincing proof that the proceedings would be tried sooner in the state court than in federal district court, the Remand Movants would lose. That is not the standard. Rather, predicting when the proceeding will be tried is but one of many factors to consider. *Midgard,* 204 B.R. at 779 (holding that bankruptcy court erred in finding that parties seeking remand had failed to prove the "timely adjudication" element simply because they did not present evidence on the state court's trial calendar).

■■■ The phrase "timely adjudication" is not defined in the Bankruptcy Code. *Midgard,* 204 B.R. at 778. Courts interpreting this phrase have not focused primarily on when the case would be tried but rather on whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case. *Id. See World Solar Corp. v. Steinbaum (In re World Solar Corp.),* 81 B.R. 603, 612 (Bankr.S.D.Ca. 1988); *J.D. Marshall, Int'l,* 74 B.R. at 655; *Allard v. Benjamin (In re DeLorean Motor Co.),* 49 B.R. 900, 911 (Bankr.E.D.Mich. 1985); *Frazier v. Lawyers Title Ins. Corp. (In re Butcher),* 46 B.R. 109, 113 (Bankr. N.D.Ga.1985).

■■■ In evaluating whether allowing a case to proceed in state court will adversely affect the administration of a bankruptcy case, courts have considered some or all

of the following factors: (1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court prior to being removed (i.e., whether discovery had been commenced); (3) status of the bankruptcy case; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; (6) whether a jury demand has been made; and (7) whether the underlying bankruptcy case is a reorganization or liquidation case. *Midgard,* 204 B.R. at 778–79. *See, e.g., Chiodo v. NBC Bank—Brooks Field (In re Chiodo),* 88 B.R. 780, 787 *(*W.D.Tex.1988*);* *World Solar,* 81 B.R. at 612; *J.D. Marshall, Int'l,* 74 B.R. at 654–55; *In re DeLorean Motor,* 49 B.R. at 911.

The *Midgard* court noted that any analysis of the factors must be done with a primary "focus on the larger concern of whether the administration of the bankruptcy estate will be impaired by adjudication in state court. If bankruptcy case administration is the primary focus, the nature of the bankruptcy case is the single most important factor to be considered." *Id.* If the underlying bankruptcy case is a Chapter 11 case and it is prior to confirmation, any significant delay in resolving claims which might substantially enhance the viability of the estate may prove fatal to the reorganization. Thus, in a Chapter 11 case, timely adjudication may be a critical factor on the decision to abstain. *World Solar,* 81 B.R. at 612. By contrast, United Container is a chapter 7 case. As noted in *Midgard,* 204 B.R. at 779, "in a chapter 7 case or a chapter 11 case with a confirmed liquidating plan, where the primary concern is the orderly accumulation and distribution of assets, the requirement of timely adjudication is seldom significant."

Under this standard, the United Beverage and GE Proceedings can be timely adjudicated in the state court because there is no compelling evidence or argument that administration of the estate will be impaired by remanding the proceedings to that forum. The Court's conclusion is strongly supported upon consideration of the above described factors.

First, a jury demand has been made, and unless all parties consent, which they have not, the bankruptcy court would be unable to try these proceedings. Second, virtually all of the issues are state court issues that the state court can resolve. Third, although the Court is not specifically finding that the proceedings will be tried more quickly in the state court, there is no doubt that the federal district court for the Middle District of Florida is a busy court and there is certainly no reason to expect the proceedings to be tried more quickly there than in the state court.

Finally, and significantly, there is simply no demonstrated need to bring these proceedings into the federal court because of the United Container bankruptcy. The Removing Defendants concede that the proceedings would not be tried by the United Container bankruptcy judge, Judge Glenn. Nevertheless, they argue that Judge Glenn would preside over all pre-trial matters and that he would ensure that discovery, conducted under Fed. R.Bankr.P.2004 in the main case, did not conflict with or cause prejudice to the defendants in these proceedings. This argument raises speculative rather than actual problems arising from remand of these proceedings. The Removing Defendants did not describe any contested matters presently pending in the United Container case in which discovery is being taken that could prejudice their rights as defendants in these two proceedings.

As discussed earlier, the outcome of the GE and United Beverage Proceedings may reduce Bankest's claim against United

Container and may give rise to contingent claims against United Container by the defendants. But, even if the ultimate allowance of claims against the bankruptcy estate may be affected, this "effect" will not occur until the litigation is concluded and there is no reason to believe that this will happen more quickly in the United States district court.

In sum, the Court finds that the Remand Movants have established that these proceedings can be "timely adjudicated" in the state court, when that phrase is properly interpreted by focusing on the effect of these proceedings on bankruptcy administration. As such, the Remand Movants have met all of the required elements of § 1334(c)(2), the mandatory abstention provision, and the Court is required to abstain.

## C. *Cause Exists for Permissive Abstention Under § 1334(c)(1) and Equitable Remand under § 1452*

■ Lastly, the Remand Movants contend that the Court should abstain from exercising jurisdiction over these proceedings under the permissive abstention provision of 28 U.S.C. § 1334 or, on similar grounds, equitably remand both proceedings under 28 U.S.C. § 1452(b). Section 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Under this commonly called discretionary or permissive abstention provision, courts have broad discretion to abstain from hearing state law claims whenever appropriate in the interest of justice, or in the interest of comity with state courts or respect for state law. *See In re Gober*, 100 F.3d 1195, 1206 (5th Cir.1996) *citing In re Wood*, 825 F.2d 90, 93 (5th Cir.1987).

■ Similarly, this Court has the statutory authority to equitably remand these proceedings under 28 U.S.C. § 1452(b). That section provides that "the court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." Since the discretionary abstention and equitable remand doctrines are similar, *see Thomas v. R.J. Reynolds Tobacco Company*, 259 B.R. 571, 578 (S.D.Miss.2001), courts considering relief under these sections consider similar factors. These include: (1) the effect, or lack of effect, on the efficient administration of the bankruptcy estate if discretionary abstention is exercised, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of related proceedings commenced in state court or other non-bankruptcy courts, (5) the jurisdictional basis, if any, other than § 1334, (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to jury trial, (12) the presence in the proceeding of non-debtor parties, (13) comity, and (14) the possibility of prejudice to other parties in the action. *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir.1990); *Chickaway v. Bank One Dayton*, 261 B.R. 646, 651–52 (S.D.Miss. 2001); *R.J. Reynolds Tobacco Co.*, 259

B.R. at 578–79; *Searcy v. Knostman,* 155 B.R. 699, 710 (S.D.Miss.1993); *Wood v. Ghuste (In re Wood),* 216 B.R. 1010, 1014 (Bankr.M.D.Fla.1998); *Republic Readers Service Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Service Inc.),* 81 B.R. 422, 429 (Bankr.S.D.Tex.1987).

■ Several of these commonly identified factors are present here and present a strong argument for permissive abstention. First, Bankest has demanded, and has the right to a jury trial in these proceedings, which means that the trial would not be conducted by the bankruptcy judge administering the United Container case. Second, as described earlier, there is no federal jurisdictional basis other than related to jurisdiction under § 1334. Third, state law issues predominate in these proceedings. Comity for the state courts and the general principle that cases arising under state law should generally be tried in the state court weigh in favor of permissive abstention. *See In re Condra,* 212 B.R. 987, 991 (Bankr.M.D.Ala.1997).

Fourth, all of the parties in these proceedings are non-debtors. Moreover, only one of the more than 50 defendants in the United Beverage proceeding supports removal. All others who have appeared in this Court have either moved for remand, filed a joinder in a motion for remand, or announced in open court support for the remand motions. To retain jurisdiction on the basis of one party's desire contrary to the collective will of all other co-defendants, would be prejudicial to the other parties.[1]

■ Two important and related factors remain for discussion: the burden on the bankruptcy court of retaining these proceedings and the effect or lack of effect of these proceedings on the efficient administration of the bankruptcy case. The United Container bankruptcy case is in Bankruptcy Judge Glenn's division in Tampa, Florida, one of the busiest bankruptcy courts in the country. In view of the number of defendants and complexity of the claims in these proceedings and, based upon this Court's brief experience in presiding over these proceedings, administering the pretrial proceedings in these two cases will be extremely time consuming. In the short time these proceedings have been pending in this Court, literally dozens of motions have been filed, including several discovery motions. Courts contemplating permissive abstention properly consider the burden on the bankruptcy court of retaining the proceeding. *See In re Wood,* 216 B.R. 1010, 1015 (Bankr.M.D.Fla.1998). In the *Wood* case, Judge Corcoran, who coincidently sits in the same Tampa division as Judge Glenn, considered the effect on his docket noting that "the congested nature of this court's docket would clearly motivate the court to avoid reaching out to resolve disputes, such as this one, that it need not resolve." *Id.*

■ Obviously, burdensomeness alone would not dictate abstention. However, the enormous burden that administering these adversary proceedings would place on Judge Glenn must be weighed against the effect of these proceedings on the administration of the bankruptcy case or, as some courts describe it, the degree of relatedness or remoteness of the proceedings to the main bankruptcy case. When a state court proceeding sounds in state law and bears a limited connection to a debtor's bankruptcy case, abstention is particularly compelling. *In re Titan Energy, Inc.,* 837 F.2d 325 (8th Cir.1988). In *Titan*

---

1. This factor is not applicable in the GE proceeding where GE has filed the Notice of Removal and no other defendants have appeared. The absence of this factor in the GE proceeding, however, does not change the result.

the court acknowledged that resolution of the lawsuit at issue could have a peripheral impact on the bankruptcy estate sufficient to establish related to jurisdiction, but still be insufficient to require the court to exercise such jurisdiction. *Id.*, at 332. *See also In re Clayter*, 174 B.R. 134 (Bankr. D.Kan.1994). The Sixth Circuit also commented on the "degree of relatedness" in *In re Salem Mortgage Company*, 783 F.2d 626 (6th Cir.1986) stating that "[t]he degree to which the related proceeding is related to the bankruptcy case, as a practical matter, will doubtless be an important factor in the decision whether to abstain." *Id.* at 635.[2]

As noted, "related to" jurisdiction, if it exists, barely exists under the facts presented here. While the outcome of these proceedings may affect claims against the Debtor, the minimal benefit, if any, of Judge Glenn presiding over the substantial pretrial aspects of these proceedings is greatly outweighed by the substantial burden that such administration would place on his docket. In sum, based upon a review of the relevant factors, the Court concludes that it should abstain from hearing these proceedings under the permissive abstention provision in § 1334(c)(1), or should equitably remand the proceedings

back to state court under 28 U.S.C. § 1452(b) even if it was not required to abstain under the mandatory abstention provisions in § 1334(c)(2).

### *Conclusion*

The removal of these proceedings was proper under 28 U.S.C. § 1452, because there is related to jurisdiction under § 1334. However, this Court is required to abstain from hearing the GE and United Beverage proceedings under the mandatory abstention provisions in 28 U.S.C. § 1334(c)(2). Moreover, even if abstention was not required, the Court would exercise permissive abstention under § 1334(c)(1), and alternatively, exercise its equitable power of remand under § 1452(b). These proceedings were filed in state court; that is where they should be and must be tried.

A separate Order Granting the Motions for Remand will be entered in each of the two adversary proceedings.

---

**2.** The Removing Defendants rely upon *In re Celotex*, 124 F.3d 619 (4th Cir.1997) in attempting to bolster relatedness. *Celotex* is markedly different from these proceedings, and actually exemplifies why this Court finds it appropriate to remand these barely related proceedings back to state court. In *Celotex*, the debtor had already been adjudicated jointly liable for the amounts in controversy. In the present case, no such determination has been made. The Debtor is not a party to these proceedings and its liability will not be determined by the adjudication of these proceedings.